**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

EQUAL EMPLOYMENT                                                                                    PLAINTIFF
OPPORTUNITY COMMISSION

v.                                              No. 3:06CV00176 JLH

SOUTHWESTERN BELL TELEPHONE, L.P.
d/b/a AT&T SOUTHWEST AND
SBC COMMUNICATIONS                                                                                  DEFENDANT

**OPINION AND ORDER**

The Equal Employment Opportunity Commission brought this action on behalf of Jose (Joe) Gonzalez and Glenn Owen alleging that they were discriminated against by Southwestern Bell because of their religious beliefs in violation of Title VII of the Civil Rights Act of 1964. Southwestern Bell has filed a motion for summary judgment. For the following reasons, this motion is denied.

**I.**

Owen and Gonzalez, who are members of the Jehovah's Witness faith, worked as customer service technicians for Southwestern Bell, now known as AT&T, at an Installation and Repair Center in Jonesboro, Arkansas. As customer service technicians at the Installation and Repair Center, Owen and Gonzalez installed new phone and high-speed internet lines and responded to customer complaints about telephone outages.

In keeping with its 2004 agreement with the Communication Workers of America Union, the Center implemented a procedure for employees to schedule vacation time. In October or November of each year, management circulated a vacation schedule for the following year. The employees indicated on the master schedule the days or weeks that they planned to take as vacation. The employees were allowed to choose their vacation days in order of seniority. After the master

schedule was complete, an employee could still ask for other days off by submitting a vacation request form. According to AT&T, during the summer months, only one technician per day could take off. If a request were made for a day that no other employee was scheduled to be off, then that request would be granted, but if a request were made for a day in which another employee was scheduled to be off, according to AT&T, the request would not be granted, though the employee requesting that day could wait to see if the senior employee who had already scheduled a vacation day changed his mind about taking that day.

As part of practicing their faith, Owen and Gonzalez attend a yearly Jehovah's Witness convention. The dates for the convention are announced early in the year, so they are always announced after the master vacation schedule has been circulated at the Jonesboro Installation and Repair Center. Thus, Owen and Gonzalez had to make a vacation request if they wanted that time off. The 2005 convention was scheduled for July 15-17 (Friday through Sunday). The only day of concern in this case is Friday, July 15, when both men were scheduled to work. They were not scheduled to work that Saturday. Customer service technicians do not work on Sundays.

For purposes of the summary judgment motion, AT&T concedes that before July 2005 Owen and Gonzalez submitted multiple written and verbal requests to Jacob Garrett, the manager of the Jonesboro Center, for vacation time on July 15. The men approached Garrett about the Jehovah's Witness convention and its importance on July 7 as well. Garrett said that he would let them know about it closer to July 15.

The decision had still not been made on July 14. Gonzalez spoke with Garrett that day about the matter by telephone approximately three times. Garrett and Phillip Farley, the area manager to whom Garrett reported, were working together that day and discussed the request made by Owen and

Gonzalez. Garrett also discussed the request with Marty Benz.[1] Benz was the manager of the Walnut Ridge, Paragould, and Blytheville Centers, but he worked out of the Jonesboro office. Benz and Garrett discussed ways the situation could be handled, such as getting the employees who were scheduled for vacation time to switch with Owen and Gonzalez, or requesting help from computer service technicians from other centers, as they sometimes would do in circumstances of a heavy workload. After reviewing the workload information and considering other factors, Garrett told Owen and Gonzalez on the afternoon of July 14 that "the forecast doesn't look good" and he would "try to do what [he could] if the load permits." Later that afternoon or evening, Garrett informed them that the workload would not allow them to take the day off. Because Garrett suspected they might not show up the next day, he gave each man a directive to come to work or face serious consequences. Each responded that he would not be at work. Farley contacted the local union president, who called the men to reiterate that they would face serious consequences for missing work.

Owen and Gonzalez missed work on July 15. Farley and Garrett suspended the men after an investigatory meeting. Farley recommended to the director of Installment and Repair that the two men should be terminated. The director followed his recommendation.

Gonzalez and Owen filed a charge of discrimination with the Equal Employment Opportunity Commission. The Commission investigated the charges and issued a letter of determination finding probable cause that both men had been denied a reasonable accommodation because of their religious beliefs. The Commission filed this lawsuit on behalf of Gonzalez and Owen based on religious discrimination under Title VII.

---

[1] AT&T's briefs spell his name as *Binns*, but his deposition transcript reports his name as *Benz*.

## II.

A court should enter summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986). When a nonmoving party cannot make an adequate showing on a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The moving party bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553. If the moving party meets this burden, "the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (quoting FED. R. CIV. P. 56(e)). A genuine issue for trial exists only if there is sufficient evidence to allow a jury to return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511. In deciding a motion for summary judgment, the Court views the facts in the light most favorable to the nonmoving party and draws all inferences in his favor, mindful that summary judgment seldom should be granted in discrimination cases where claims are often based on inferences. *Peterson v. Scott County*, 406 F.3d 515, 520 (8th Cir. 2005); *Bassett v. City of Minneapolis*, 211 F.3d 1097, 1099 (8th Cir. 2000) (collecting cases). *But see Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 762 (8th Cir. 2004) (Arnold, J., dissenting).

**III.**

It is unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion . . . ." 42 U.S.C. 2000e-2(a)(1) (2000). "An employee establishes a prima facie case of religious discrimination by showing that: (1) the employee has a bona fide religious belief that conflicts with an employment requirement; (2) the employee informed the employer of this belief; (3) the employee was disciplined for failing to comply with the conflicting employment requirement." *Wilson v. U.S. West Communications*, 58 F.3d 1337, 1340 (8th Cir. 1995). For purposes of the summary judgment motion, AT&T does not dispute that Owen and Gonzalez had a bona fide religious belief that required them to attend the convention on July 15, that they so informed AT&T, and that they were disciplined for missing work on July 15.

Once the plaintiff establishes a prima facie case of religious discrimination, the burden shifts to the employer to show "that he is unable to reasonably accommodate to an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. 2000e(j). An employer must prove either that the employee was reasonably accommodated or that the employee could not be reasonably accommodated without undue hardship. *EEOC v. Chemsico, Inc.*, 216 F. Supp. 2d 940, 950 (E.D. Mo. 2002) (citing *Seaworth v. Pearson*, 203 F.3d 1056 (8th Cir. 2000)). In its motion for summary judgment, AT&T asserts only the latter, that the accommodation requested by Owen and Gonzalez caused an undue hardship for AT&T.

AT&T argues that when Owen and Gonzalez disregarded the directive to be at work on Friday, July 15, they caused an undue hardship on AT&T because other employees were required to work overtime and AT&T was forced to pay premium wages for that work. AT&T also argues

that the absence of Owen and Gonzalez caused it to be unable to meet the service needs of all of its customers that day.

The Supreme Court has observed that "the employer's statutory obligation to make reasonable accommodation for the religious observance of its employees, short of incurring an undue hardship, is clear, but the reach of that obligation has never been spelled out by Congress or by EEOC guidelines." *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 75, 97 S. Ct. 2264, 2272, 53 L. Ed. 2d 113 (1977). In *Hardison*, the Supreme Court held that to require the employer "to bear more than a *de minimis* cost" to accommodate the employee's religious beliefs is an undue hardship. *Id.* at 85, 97 S. Ct. at 2277. To determine whether an accommodation would require the employer to bear more than a *de minimis* cost, "the circumstances under which a particular accommodation may cause undue hardship . . . must be made in the particular factual context of each case." *Chemsico*, 216 F. Supp. 2d at 952.

In *Hardison*, the Supreme Court held that it would be an undue hardship if the employer were required to pay "premium wages" or lose efficiency in other jobs from which substitute workers would be taken to replace the employee who missed work for religious reasons. *Id.* at 84, 97 S. Ct. at 2277. Similarly, in *Mann v. Frank*, 7 F.3d 1365, 1369 (8th Cir. 1993), the Eighth Circuit upheld the district court's determination that accommodating Mann's religious belief, which required her not to work from sundown Friday until sundown Saturday, would be an undue hardship on the employer. In that case, Mann had placed her name on a list to volunteer for overtime shifts but suggested that an employee who had not volunteered on the list could be substituted for her when the shift was on Saturday. *Id.* She also suggested requiring other employees to work longer shifts or that the employer not replace her on those shifts. *Id.* The court recognized, however, that requiring other employees to work longer would violate the collective bargaining agreement (an

undue hardship the employer is not required to undertake), and that "just doing without" her would cause a "significant loss in efficiency." *Id.* at 1369-70.  In *Cook v. Chrysler Corp.*, 981 F.2d 336, 339 (8th Cir. 1992), the Eighth Circuit upheld a finding that there was more than *de minimis* cost to an employer when an employee's religious beliefs did not allow him to work on Friday nights or Saturdays.  There, the costs included the fact that one proposed accommodation would make the employee part-time but would allow him to receive full-time benefits at a cost to the employer of $1500 per year.  *Id.* (recognizing alternatively the cost of hiring another temporary part-time employee to work employee's shifts).  The facts here are different from those in *Hardison*, *Mann*, and *Cook* because each of those cases involved employees whose religious beliefs required them to miss work one day out of every week, whereas Owen and Gonzalez needed accommodation only once each year.

AT&T asserts that sixteen hours of overtime resulting in $882.88 in "premium wage payments" were required due to the failure of Owen and Gonzalez to work on July 15.  The EEOC says that the cost of accommodating Owen and Gonzalez should properly be calculated as $441.44, or $220.72 each.  The EEOC notes that AT&T's calculation does not recognize the amount that it saved by not paying Owen and Gonzalez on July 15.  The record is silent as to whether Owen and Gonzalez could take a day without pay.  If they could do so, the EEOC would seem to be correct that the cost of accommodating Owen and Gonzalez would be $220.72 per person.  Furthermore, the EEOC argues that this overtime cost must be viewed in context.  Specifically, the EEOC points to evidence that overtime is a regular occurrence for AT&T's technicians in the Jonesboro Center.  An overtime report for technicians in the Jonesboro Center showed that 987.56 overtime hours were worked in July 2005 and a total of 7,088.68 overtime hours were worked during the first seven

months of 2005. In that context, AT&T argues, the sixteen hours of overtime paid by AT&T on July 15 as a result of Owen and Gonzalez missing work, is *de minimis*.

Viewing the facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in its favor, as the Court must do in ruling on a motion for summary judgment, the Court cannot say as a matter of law that the cost to AT&T of accommodating Owen and Gonzalez was no more than *de minimis*.

In *Chemsico*, the court denied summary judgment because the employer made no attempts to replace the employee, the employer did not inquire with the Union representative about a possible accommodation, and the employer used volunteers or ran its operations with fewer employees on other occasions when employees missed work. *Chemsico*, 216 F. Supp. 2d at 953. While AT&T asserts that no more than one employee could miss work on a certain day, the EEOC points to evidence of occasions on which more than one employee was allowed to miss work. The EEOC also observes that, while the Union representative was contacted, the contact was made after the managers decided to give Owen and Gonzalez a directive to work despite their religious obligation to attend the convention; management did not contact the representative about possible accommodation of the employees.

Finally, although the affidavit of Phillip Farley says that the service needs of some customers could not be met on July 15, there is no evidence from which the Court could say that this was more than a *de minimis* hardship. Farley says that delays in repairs and installation often result in customers being displeased with AT&T. He says that customers often stay home or stay off work to meet AT&T's technicians. He says that, when AT&T does not meet a customer's service needs, the customer may complain to the Arkansas Public Service Commission or switch to another provider. He says that dissatisfied customers may complain to their neighbors, which can result in

lost customers.  He also says that regulations of the Arkansas Public Service Commission require that service be restored within 24 hours after an outage is reported.  However, Farley does not say that any of these potential adverse consequences actually occurred as a result of the Jonesboro Center's inability to meet all of the service needs on July 15.  He does not say that any customer actually complained to the Arkansas Public Service Commission, switched to another provider, or injured AT&T's reputation in the community.  He does not say that AT&T actually violated a regulation or was subjected to any penalty by the regulatory authority.  Nothing is said about the nature of the service needs that went unmet or the actual consequence of failing to meet those needs, so it is impossible to say, on the record before the Court, whether AT&T's inability to meet these service needs caused a *de minimis* or more than *de minimis* hardship.

## CONCLUSION

AT&T has failed to show that there is no genuine issue of material fact as to whether accommodating Owen's and Gonzalez's religious beliefs would have caused it to suffer more than a *de minimis* hardship.  AT&T's motion for summary judgment is therefore DENIED.

IT IS SO ORDERED this 3rd day of October, 2007.

J. LEON HOLMES
UNITED STATES DISTRICT COURT